## MOORE et al. v. DESERET LIVE STOCK CO.

No. 4930.   Decided June 13, 1930.   (288 P. 903.)

*H. Van Dam, Jr.,* of Salt Lake City, and *George H. Crosby, Jr.,* of Evanston, Wyo., for appellants.

*P. H. Neeley,* of Coalville, for respondent.

STRAUP, J.

The plaintiffs, Samuel Moore and Charles H. Moore, brought this action against the defendant, the Deseret Live Stock Company, a corporation, to quiet title to an undivided two-thirds interest in and to about 393 acres of land in Sec. 16, Tp. 5 N., R. 7 E., in Summit county. The action was commenced December 27, 1927. The plaintiffs allege that they are the owners, entitled to the possession, and were in actual possession of such lands for more than seven years prior to the commencement of the action. The defendant denied the material allegations of the complaint and alleged ownership, possession, and right of possession in it since 1919. The case was tried to the court who, on findings, rendered judgment in favor of the defendant, from which the plaintiffs appeal.

The chief contentions of the plaintiffs are that the findings are not supported by and are contrary to the evidence. The court found that the plaintiffs, prior to the commencement of the action, by good and sufficient deeds had conveyed the lands in question to the defendant. The court further found that the plaintiffs were estopped from asserting or claiming title or possession as against the defendant. There is little conflict in the evidence as to a conveyance made by the plaintiff Charles H. Moore to the defendant of the lands in question. There is some conflict in the evidence, not as to a deed signed and acknowledged by the plaintiff Samuel Moore and his wife conveying the lands in question to the defendant, but as to a delivery of such deed; Samuel contending it was not delivered and the defendant that it was.

David Moore, the father of the plaintiffs, and of T. E. Moore, David E. Moore, J. E. Moore, and grandfather of Clarence F. Moore, owned considerable lands, mostly grazing lands and some hay lands, among other lands, lands in section 16 and in section 30, in township 5 north, range 7 east, Summit county. The defendant, the Deseret Live Stock Company, also owned considerable grazing and hay lands,

some of which adjoined the lands of David Moore in sections 28, 30, 25, and 31, township 5 north, range 7 east, in Summit county. For mutual convenience in grazing and occupying portions of their respective lands, David Moore and the Deseret Live Stock Company desired to make an exchange of lands. So, on May 9, 1919, David Moore and his wife entered into a written agreement with the Deseret Live Stock Company whereby David Moore and his wife agreed to convey to the Deseret Live Stock Company lands in section 16 and in section 30 in exchange for lands owned by the Deseret Live Stock Company in sections heretofore mentioned and which the company was to convey to David Moore. Of the lands in section 16 which David Moore had agreed to convey to the Deseret Live Stock Company, there were about 393 acres in which the plaintiffs, Samuel and Charles H. Moore, owned an undivided two-thirds interest. Neither of them signed the agreement. Both of them, however, had knowledge that their father by the agreement had agreed and undertook to convey the whole of section 16, including the 393 acres in which the plaintiffs had an interest, and made no objections to their father entering into the contract or of making such conveyance. In fact, they, especially Samuel, aided and assisted in the arrangement and in making the exchange of the lands and as by the terms of the agreement entered into between David Moore and the Deseret Live Stock Company. It was understood that the plaintiffs were to have other lands deeded to them in lieu of their interest in the 393 acres in section 16. The deeds between David Moore and the Deseret Live Stock Company were not to be executed and delivered until surveys were made defining the boundary lines of the respective tracts and parcels of lands to be exchanged and conveyed. David Moore died in July, 1919, before the surveys were made and deeds executed and delivered. William Moore, one of his sons, was appointed administrator of his estate in August, 1919. A corporation was organized in February, 1920, called the David Moore & Sons, Incorporated, and

all of the estate of David Moore, including all of his rights in and to the contract entered into between him and the Deseret Live Stock Company and the lands described in the contract which he and his wife had agreed to convey to the Deseret Live Stock Company, were distributed to the corporation of David Moore & Sons, Incorporated. In other words, though David Moore was not the exclusive owner of the 393 acres in section 16, and though the plaintiffs were the owners of an undivided two-thirds interest therein, nevertheless the whole of such acreage, by probate proceedings, was, with the knowledge and consent of the plaintiffs, distributed as the sole property of David Moore to the corporation of David Moore & Sons, Incorporated, of which the plaintiffs and five or six other children and two grandchildren of David Moore constituted the sole stockholders of the corporation. It took some time until the survey was made and fences built defining the boundary lines of the lands to be exchanged. Although there is some conflict in the evidence, yet we think the fair preponderance of it shows, and, as found by the trial court, the Deseret Live Stock Company shortly after the contract was entered into between it and David Moore, went in possession of the lands in section 16, including the 393 acres in which the plaintiffs had an interest, and remained in possession until the commencement of this action, a period of a little more than seven years, and went into the possession and occupied such lands under and in pursuance of the contract and with the consent and acquiescence of the plaintiffs who occupied and possessed other lands in lieu of the 393 acres in which they had an interest.

In December, 1921, David Moore & Sons, Incorporated, Samuel Moore one of the plaintiffs and his wife, and Charles H. Moore, the other plaintiff, unmarried, and William Moore and his wife, signed a warranty deed conveying to the Deseret Live Stock Company the 393 acres in section 16 in which the plaintiffs had an interest. The deed was acknowledged by the David Moore & Sons, Incorporated, and

by William Moore and his wife before a notary public on December 27, 1921. It was acknowledged before a notary public by Samuel Moore and his wife and by Charles H. Moore May 27, 1922. That the deed was so signed and acknowledged by the plaintiffs by the terms of which a conveyance of the 393 acres was made to the Deseret Stock Company is admitted by the plaintiffs. The contention made by Samuel is that the deed at no time was delivered with his knowledge or consent. In that respect he, in substance, testified that when he signed and acknowledged the deed, he, without a delivery of it, took it home and put it in a metal box where he kept other papers and documents; that he last saw the deed in the box in July, 1922; that about that time, as he testified, T. E. Moore, who was the president of the David Moore & Sons, Incorporated, and who with the secretary of the corporation had signed the deed on behalf of the David Moore & Sons, Incorporated, came to the residence of Samuel and took him, his children, and the box to the residence of T. E. Moore, where Samuel remained a short time and then was sent to Salt Lake by T. E. Moore for some time; that the box remained in the possession of T. E. Moore until some time in 1923, when it was delivered back to Samuel by T. E. Moore; and that, when Samuel examined the box, he found the deed missing and at no time had consented to a delivery of the deed. Samuel's wife testified that the box was in the possession of T. E. Moore for about 2½ months from about August 1, 1922, and then was delivered to her by T. E. Moore, but she did not examine the box to see whether the deed was in the box or not.

T. E. Moore testified that, after the deed was signed and acknowledged by the plaintiffs, Samuel handed the deed to him with directions that it be delivered to the Deseret Live Stock Company upon delivery of deeds to lands which by the contract it had agreed to deliver to David Moore, and that T. E. Moore, in pursuance thereof, and on behalf of all others who had signed the deed, delivered it to the

Deseret Live Stock Company and received its deed of the lands to be conveyed by it as by the contract provided. Samuel at no time objected to the conveyance of his interest in and to the 393 acres in accordance with the terms of the contract entered into between David Moore and the Deseret Live Stock Company. He at all times agreed to and acquiesced in that. After the David Moore & Sons, Incorporated, was organized and the whole estate of David Moore distributed to the corporation, disagreements and dissentions arose between Samuel Moore and William Moore, the administrator of the estate, and some of the officers of the corporation, with respect to what lands were to be conveyed to Samuel in lieu of his interest in and to the 393 acres. It was claimed there was a written agreement entered into concerning the subject, but that it was lost. Samuel testified that it or a copy of it was in his box and that it too was missing about the time the deed was missing. But whatever writings there may have been concerning such matter, the terms thereof are not disclosed with any degree of certainty or definiteness. It was the contention of the defendant that the corporation, David Moore & Sons, Incorporated, had tendered to Samuel and to Charles H. Moore deeds to lands in lieu of their interest in the 393 acres, and in accordance with an agreement and understanding with the plaintiffs, and that they refused to accept the deeds to other lands direct from the Deseret Live Stock Company and demanded a conveyance direct from it. The live stock company, however, was under contract to convey to the David Moore & Sons, Incorporated, which had succeeded to all of the rights of David Moore in and to the contract between him and the Deseret Live Stock Company. The Deseret Live Stock Company hence was not in position to make a conveyance direct to the plaintiffs or either of them. Samuel Moore testified that he at all times and even at the trial was willing that the contract between David Moore and the live stock company be carried out, and had no objection whatever to the conveyance made to the Des-

eret Live Stock Company as by the terms of the contract provided. However, since the disagreements and dissentions arose between him and the administrator of the estate of David Moore and of the David Moore & Sons, Incorporated, Samuel declined to deal with them, and insisted that the live stock company convey lands direct to him in lieu of his interest in the 393 acres. The live stock company, instead of conveying any of the lands to the plaintiffs, conveyed all of them to the David Moore & Sons, Incorporated, as it had agreed to do by its contract with David Moore, and because the defendant refused to make a conveyance to the plaintiffs led to this lawsuit.

On the record we approve the finding made by the trial court that the deed signed and delivered by the plaintiffs conveying the lands in question to the Deseret Live Stock Company was delivered to it with the consent of the plaintiffs. We think such finding is supported by a fair preponderance of the evidence and by the facts and circumstances surrounding the transaction. No claim is made that Samuel was not competent to sign, acknowledge, and execute the deed, nor is it claimed that his signature was procured through fraud, misrepresentation, or undue influence. In addition to the deed signed by the plaintiffs and the David Moore & Sons, Incorporated, conveying the 393 acres to the Deseret Live Stock Company, Charles H. Moore thereafter made a separate deed conveying all his right, title, and interest in such lands to the Deseret Live Stock Company. It was alleged that such deed was made and procured through fraud, misrepresentation, and undue influence, but there is no evidence to support such allegations and no facts alleged and none proven showing fraud, misrepresentation, or undue influence.

On the record we are satisfied that, whatever grievances the plaintiffs or either of them may have, arose through disagreements and dissentions between them and the David Moore & Sons, Incorporated, with respect to what lands were to be conveyed to them in lieu of their interest in the

393 acres, but which dissentions or disagreements did not concern the Deseret Live Stock Company and in no particular were chargeable to it. The Deseret Live Stock Company fully complied with its agreement as it had contracted to do. The merits or demerits of the disagreements, as between the plaintiffs and the David Moore & Sons, Incorporated, with respect to what lands are to be or should be conveyed to the plaintiffs or to either of them in lieu of their interest in and to the 393 acres in section 16 conveyed to the Deseret Live Stock Company, were not, either by parties, pleadings, or otherwise before the court for determination and were not determined by the court below and are not now determined by us. Whatever complaint either may have in such respect must be asserted against the David Moore & Sons, Incorporated, and may not be asserted against the Deseret Live Stock Company.

CHERRY, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.